## Harbison v. Transport Workers Union of Phila., Local 234

*David H. H. Felix*, of *Felix & Felix*, for plaintiff.

*Stanley M. Greenberg*, of *Ochman & Greenberg*, for defendant.

GRIFFITHS, J., March 11, 1960.—Plaintiff brought this action to restrain defendant labor union local, its officers, members and agents, from mailing certain ballots to the membership for purpose of voting upon ratification of a proposed contract with the Philadelphia Transportation Company.

Among other things the proposed contract provides that it shall become effective on April 1, 1960, provided certain posted rate increases are allowed PTC by the Pennsylvania Public Utility Commission. It also provides that in the event the new rates become effective prior to April 1, 1960, but are later suspended or set aside by action of the PUC or a court, the proposed agreement shall become void.

We thus have presented to us a proposed contract, the enforceability of which is contingent upon a decision by a public commission or a court, considered favorably by the contracting parties. The contract smacks of personal influence by a jointure of PTC and TWU local upon members of the PUC and is contingent upon the success of their mission. As such it has overtones of a lobbying contract. Such contracts are invalid: 6 Corbin on Contracts, §1447, p. 776, and cases cited therein.

We cannot conclude from the evidence before us that the parties contemplated or used improper influences with the PUC, but the test is the general tendency to overreach the public, which this contract clearly shows, and therefore is against public policy.

In Crooks' Estate, 316 Pa. 285 (1934), our Supreme Court held a contract invalid where one party was to use his influence to secure for the other a position as professional architect with the State. While the factual situation there is not the same as in the case at bar, the language of the court, page 286, is equally applicable:

"Such a contract is plainly against public policy because of its corrupt tendency: it tends to a sale of personal influence in circumstances in which it is the duty of public officers to make the best possible appointment without regard to private interests, and in which that duty cannot properly be performed in ignorance of the contingent interests of the interceding party. Such agreements are uniformly declared

invalid, not because in particular cases improper influences were contemplated or used, but because of the general tendency to overreach the public."

In the recent case of Peyton v. Margiotti, 398 Pa. 86, decided December 30, 1959, the Supreme Court held that an agreement between an attorney and a layman that is wholly contingent upon the granting of a petition for commutation of sentence by the State Board of Pardons is against public policy and void: page 92. In the case at bar the agreement is wholly contingent upon the granting of a rate increase by the PUC. We can see no material distinction between these two cases, in principle.

Justice Bok, in writing the opinion, quoted the language of Kuhn v. Buhl, 251 Pa. 348 (1915), where Mr. Justice von Moschzisker, later Chief Justice, wrote:

" 'Whether a contract is against public policy is a question of law for the court to determine from all the circumstances in each case.' "

We have carefully considered all the circumstances in the case now before us, and, without separately delineating them, state, without equivocation, that in our opinion this contract is against public policy. It is an unholy alliance between the PTC and TWU local with a tendency to overreach the public, the membership of this union in particular and of the labor movement in general. We therefore declare it illegal and void and order that it be not submitted to the membership for ratification.

It becomes unnecessary, therefore, for us to determine the other issues raised by the parties in the pleadings and proofs.

### Order

And now, March 11, 1960, the preliminary injunction granted March 2, 1960, is continued until final hearing or further order of the court.